UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21339-CIV-MARRA
(APPEAL FROM BANKRUPTCY CASE NO. 10-26423-BKC-AJC)

PRIEUR J. LEARY, III and
PRONTOCOM, INC.,

      Appellants,

v.

INFOLINK GLOBAL CORPORATION,
Reorganized Debtor

      Appellee.
_____/

## **OPINION AND ORDER**

This cause is before the Court upon Appellee's Motion to Dismiss Appeal and Incorporated Memorandum of Law (DE 5). Appellant responded. (DE 12). Appellee replied. (DE 14). The Court has considered the motion and is otherwise advised in the premises.

### **I. Background**[1]

On March 24, 2010, Infolink Group, Inc. and Infolink Information Services, Inc. (collectively "the debtors") filed separate voluntary petitions for relief through their president, Prieur J. Leary, III, under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (10-10981-KG, DE 1; 10-10982-KG, DE 1). The Delaware bankruptcy court entered an order directing the administrative consolidation and joint administration of the two cases, (10-10981-

---

[1] Unless otherwise noted, the underlying facts are derived from various documents filed in this docket, the underlying bankruptcy docket, and the related adversary proceeding. These facts, which appear to be undisputed but are derived from mainly adversarial documents, are provided for background purposes only, do not constitute findings of fact by the Court, and shall serve no precedential purpose in future judicial proceedings. For purposes of clarity, documents filed in this docket, 12-21339-CIV-KAM, shall be cited as "(DE __)"; documents filed in the underlying bankruptcy docket, 10-26423-BKC-AJC, shall be filed as "(BKC, DE __)"; and documents filed in the related adversary proceeding, 11-01885-AJC, shall be filed as "(ADV, DE __)."

KG, DE 14; 10-10982-KG, DE 8), and the consolidated case was transferred to the United States Bankruptcy Court for the Southern District of Florida on June 2, 2010. (BKC, DE 1). A successor chapter 11 trustee was appointed to manage the debtors' affairs.

On April 4, 2011, the trustee instituted an adversary proceeding on behalf of the debtors against Leary (the debtors' president) and others for, *inter alia*, fraudulent pre- and post-petition transfers of the debtors' assets. (ADV, DE 1). On May 2, 2011, the bankruptcy judge entered a Supplemental Decision and Order Granting Preliminary Injunction (ADV, DE 65) that found Leary responsible for 1) pre-petition fraudulent transfers of the debtors' assets; 2) apparent intentional misrepresentations made by Leary under oath in the debtors' bankruptcy schedules; 3) post-petition fraudulent transfers of the debtors' assets; 4) fraudulent transfers of the debtors' assets even after the appointment of a Chapter 11 trustee; and 5) further fraudulent transfers and attempted fraudulent transfers of the debtors' assets even after the bankruptcy court entered a temporary restraining order.[2] One of the post-restraining order attempted transfers occurred when Leary sent a written request to one of the debtors' merchant service providers attempting to change the payee account to Appellant Prontocom, Inc. (ADV, DE 65 at 10 ¶ 17).[3] Leary's attempted transfer of assets to Prontocom was denied by the merchant service provider, however, because provisions of the restraining order prevented the provider from transferring ownership of the merchant accounts.

On May 11, 2011, the bankruptcy court held Leary in civil contempt and directed that he be arrested by the United States Marshal after Leary twice failed to appear for depositions relating to the

---

[2] The temporary restraining order was entered on April 4, 2011—the same day the trustee instituted the adversary proceeding. (ADV, DE 5).

[3] Prontocom is a Delaware corporation that Leary formed post-petition and after the appointment of the trustee.

trustee's attempt to convert the restraining order into a preliminary injunction. (ADV, DE 86). The bankruptcy court gave Leary an opportunity to escape the consequences of contempt if he appeared for a deposition and produced documents within ten days of the contempt order. Leary again failed to appear. The bankruptcy court thus concluded that

> given Leary's long history of willful disregard and contempt for the Bankruptcy Code, the bankruptcy process, this Court and its Orders, and these proceedings in general . . . , the entry of a default judgment against Leary and the Defendant entities of which Leary is an officer and on whose behalf he failed to appear for deposition . . . is the most appropriate sanction under these circumstances.

(ADV, DE 155 at 4–5). In ordering that judgment as to liability and for injunctive relief be entered against Leary on the trustee's claims, the court specifically found that certain transfers were established for purposes of the judgment and were fraudulent in nature. *Id.* at 6. For example:

> [A merchant service account held by an entity named Innovative Merchant Solutions] for credit card processing was transferred pre-petition from [Debtor] Infolink Information Services to [an entity named] Infolink Communication. Post-petition, it was again transferred to [an entity named] Pronto Inc. just eight days before the hearing in [the bankruptcy court] on the Motion to Appoint a Chapter 11 Trustee. Two days after entry of [the bankruptcy court's] Temporary Restraining Order, Leary attempted to again transfer it to [Appellant Prontocom, Inc.] (a newly formed corporation, and not a defendant in this action) but was stifled because of provisions in the Temporary Restraining Order that restrained Innovative Merchant Solutions from making the requested transfer. The transfer of the account from Infolink Information Services to Infolink Communication and the transfer of the account from Infolink Communication to Pronto Inc. were fraudulent transfers. The transfer of the account to Pronto Group, Inc. was also a violation of the bankruptcy automatic stay, 11 U.S.C. § 362.

*Id.* at 7 ¶ 5.

On January 6, 2012, the holder of the largest allowable claim against the debtors' consolidated bankruptcy estate and a group of the debtors' other creditors, stockholders, and investors proposed a Chapter 11 Plan of Reorganization. (BKC, DE 863). Under the reorganization plan, all of the

debtors' assets—including those the bankruptcy court found to be fraudulently transferred—would vest in a "reorganized debtor" as of the effective date of the plan. (BKC, DE 863 ¶¶ 1.15, 5.1.2, 14.14). The bankruptcy court confirmed the plan on February 2, 2012, waiving the 14-day stay otherwise applicable under Federal Rule of Bankruptcy Procedure 3020(e) and authorizing the plan's proponents to consummate the transactions contemplated by the plan upon the order's entry. (BKC, DE 898 ¶¶ 11, 27).

The reorganization plan called for, *inter alia*, the creation of an entity to serve as the reorganized debtor. Consistent with the terms of the plan, a Florida corporation named Infolink Global was specially created to serve as the reorganized debtor, and the "Infolink Global" entity took over control of the debtors' business, operations, assets, and affairs.

The plan also provided for a number of other transactions upon its confirmation: 1) all allowed claims in the underlying bankruptcy case, totaling over $1.3 million, were paid in full while a cash reserve was established to fund payment of disputed claims; 2) all of the debtors' assets and property vested in the reorganized debtor; 3) new equity shares in the reorganized debtor vested in certain of the debtors' existing stockholders in reconstituted amounts designated under the confirmed plan; 4) the reorganized debtor entered into a settlement and release agreement with Appellants and certain related entities by which it sold the debtors' business and all related assets to Appellants and released fraudulent transfer claims against Leary and others; 5) and the reorganized debtor filed lawsuits against certain of the debtors' pre-petition professionals for recovery of fraudulent transfers and state law claims. (DE 5, Attach. 1: James C. Kurzweg Aff.). Included in the debtors' assets and property that would vest in the reorganized debtor were 1) "the Debtors' equity interest in any affiliate, subsidiary or other entity, including . . . [Appellant] Prontocom, Inc." (BKC, DE 898 ¶ 11); and 2) "all

bank accounts held in the name of the Trustee or Debtors, and all Cash held by the Trustee in the Trustee's operating account, the remaining Infolink Cash Contribution, and/or held in the Debtors' bank accounts, including the Intuit Payment Solutions merchant account . . . in the name of Prontocom Inc. (the "Intuit Merchant Account")." *Id.* The reorganization plan authorized and directed the trustee to redirect all deposits in the Intuit Merchant Account, i.e., Prontocom's account, to the reorganized debtor.

Appellants timely appealed the bankruptcy court's confirmation order on the ground that the bankruptcy court erred by ordering an account held in the name of Appellant Prontocom, Inc., to turn over cash and other assets to the reorganized debtor without obtaining personal jurisdiction over Prontocom[4]—but Appellants failed to seek or obtain a stay of the order pending that appeal. Because Appellants did not obtain a stay, the reorganization plan took effect on February 2, 2012, the date of the bankruptcy court's order confirming the plan.

The reorganized debtor, as Appellee, moves to dismiss Appellants' appeal on two grounds. First, the reorganized debtor argues that the appeal should be dismissed as equitably moot because the reorganization plan has been substantially consummated to the point that this Court cannot grant Appellant effective relief. Second, the reorganized debtor argues that the appeal should be dismissed because Appellants lack standing under the Eleventh Circuit's "person aggrieved" standard. Appellants' response to the motion to dismiss, echoing the merits of their underlying appeal, is that the bankruptcy court had no jurisdictional authority to transfer the assets of Appellant Prontocom, Inc. For the reasons that follow, the Court finds that 1) Appellant Prontocom has standing to bring its

---

[4] Appellants Prieur J. Leary, III, and Prontocom, Inc., filed their Notice of Appeal on April 9, 2012 (DE 1), and their initial brief on May 8, 2012 (DE 13).

appeal; and 2) there is insufficient factual support in the record to conclude that the reorganization plan has been substantially consummated to the point that this Court cannot grant Appellant Prontocom effective relief.

## II. Legal Standard

"The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*." *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir.2009), and *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir.1992)).

## III. Discussion

### A. Standing

"[T]he proper inquiry to determine who may appeal a bankruptcy court order is the person aggrieved standard." *In Re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1337 (11th Cir. 2002). A person has standing as a "person aggrieved" upon the appeal of a bankruptcy court order that "directly, adversely, and pecuniarily affects the person. An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their burdens, or impairs their rights." *Id.* at 1337–38 (footnote omitted).

Here, Appellee claims that Appellant Prontocom lacks standing because Prontocom is neither a creditor nor an equity holder of the debtors in the primary bankruptcy case. Appellee further states that neither Appellant has standing to appeal because neither Appellant has a financial stake in the primary bankruptcy case.[5]

---

[5] In Appellants' Response to Motion to Dismiss (DE 12), Appellants respond solely to Appellee's argument that Prontocom lacks standing; Appellants are silent as to whether Leary has standing to appeal. The Court views Appellants' silence as a concession of the issue and accordingly concludes that Leary lacks standing to appeal.

Appellants respond by arguing that the bankruptcy court's confirmation of the reorganization plan ordered the transfer of an account held by Prontocom to the reorganized debtor. In other words, Appellants suggest that Prontocom lost its property under the reorganization plan and that this loss of property is sufficient to meet the "person aggrieved" standard.

The parties do not dispute that Prontocom owned the merchant service account and that the bankruptcy court's confirmation of the reorganization plan ordered Prontocom to transfer the account to the reorganized debtor. Appellee essentially argues that because the bankruptcy court found the property held by Prontocom was received through a fraudulent transfer, and thus was wrongfully in its possession, Prontocom is not an aggrieved party. Implicit in this argument is the conclusion that the bankruptcy court's order was correct. But determining that the correctness of the bankruptcy court's order is the reason for the appeal. The Court cannot engage in an assessment of the merits of Appellants' underlying appeal to determine whether Appellant has standing. Appellant had property in its possession which the bankruptcy court ordered transferred to the reorganized debtor. Appellant challenges the correctness of that order. If the bankruptcy court was correct, the property in question will remain with the reorganized debtor. If the bankruptcy court was incorrect, the property presumably will have to be returned to Appellant. Appellant has a sufficient stake in the proceeding for the Court to conclude that Appellant Prontocom has standing to appeal.

**B. Equitable Mootness**

"The mootness doctrine, as applied in a bankruptcy proceeding, permits the courts to dismiss an appeal based on its lack of power to rescind certain transactions." *In re Holywell Corp.*, 911 F.2d 1539, 1543 (11th Cir. 1990), *rev'd on other grounds*, *Holywell Corp. v. Smith*, 503 U.S. 47 (1992). "The mootness standard is premised upon considerations of finality . . . and the court's inability to

rescind . . . and grant relief on appeal." *Id.* (internal quotation marks omitted). As noted by the Eleventh Circuit, the mootness inquiry "involves many subsidiary questions" including "[h]as a stay pending appeal been obtained? If not, why not?" . . . "What type of relief does the appellant seek on appeal? What effect would granting relief have on the interests of third parties not before the court?" *In re Club Assocs.*, 956 F.2d 1065, 1069 n.11 (11th Cir. 1992); *see also Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 838 F.2d 1547, 1555 (11th Cir.1988) (noting that dismissal of an appeal on grounds of mootness is often granted when an appeal that would ultimately reverse the confirmation order would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court") (internal quotations and citations omitted). In the end, however, "[t]he test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." *In re Club Assocs.*, 956 F.2d at 1069 (quoting *In re Info. Dialogues, Inc.*, 662 F.2d 475, 477 (8th Cir.1981)).

Here, Appellee points to a number of transactions that have taken place since the reorganization plan took effect.[6] What is not clear from the record, however, is why the Court could not grant Appellants effective relief by ordering the return of the merchant service account to

---

[6] As listed above, the reorganization plan called for the following transactions: 1) all allowed claims in the underlying bankruptcy case, totaling over $1.3 million, were paid in full while a cash reserve was established to fund payment of disputed claims; 2) all of the debtors' assets and property vested in the reorganized debtor; 3) new equity shares in the reorganized debtor vested in certain of the debtors' existing stockholders in reconstituted amounts designated under the confirmed plan; 4) the reorganized debtor entered into a settlement and release agreement with Appellants and certain related entities by which it sold the debtors' business and all related assets to Appellants and released fraudulent transfer claims against Leary and others; 5) and the reorganized debtor filed lawsuits against certain of the debtors' pre-petition professionals for recovery of fraudulent transfers and state law claims. (DE 5, Attach. 1: James C. Kurzweg Aff.).

Prontocom. While Appellee states such that the reorganization plan was "substantially consummated to the point where the transactions implemented and third party rights vested thereunder cannot be undone, and, as such, effective judicial relief cannot be granted" (DE 5 at 7 ¶ 15), Appellee has failed to provide the Court any indication as to the potential effect of such a return. *See In Re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 738 (S.D. Fla. 2010) ("The burden of establishing mootness is on the party seeking dismissal) (citing *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009)). Based on the pleadings of the parties and the record on appeal, the Court cannot conclude that relief is unavailable to Appellants such that their appeal should be dismissed as equitably moot.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Appellee's Motion to Dismiss Appeal and Incorporated Memorandum of Law (DE 5) is **GRANTED in part and DENIED in part.**

2) Appellee's Motion to Dismiss Appeal and Incorporated Memorandum of Law (DE 5) is **GRANTED** to the extent the Court concludes Appellant Prieur J. Leary, III, lacks standing to appeal the bankruptcy court's order confirming the reorganization plan.

3) Appellee's Motion to Dismiss Appeal and Incorporated Memorandum of Law (DE 5) is **DENIED** as to Appellee's remaining arguments.

4)     Appellee's response to Appellants' initial brief shall be due on or before January 4, 2013..

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of December, 2012.

_____
KENNETH A. MARRA
United States District Judge