UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21339-CIV-MARRA
(APPEAL FROM BANKRUPTCY CASE NO. 10-26423-BKC-AJC)

PRIEUR J. LEARY, III and
PRONTOCOM, INC.,

    Appellants,

v.

INFOLINK GLOBAL CORPORATION,
Reorganized Debtor

    Appellee.
_____/

**OPINION AND ORDER**

    Appellant Prontocom, Inc. filed this bankruptcy appeal challenging the Order Confirming Second Amended Chapter 11 Plan of Reorganization for Debtors, Infolink Group, Inc. and Infolink Information Services, Inc., Proposed by Creditor James C. Kurzweg and Infolink Equity Group in Bankruptcy Case No. 10-26423-AJC.  The parties have fully briefed the issues.  For the reasons that follow, the Court affirms the Bankruptcy Court's order.

**I. Jurisdiction**

    District courts have jurisdiction to review appeals from final bankruptcy court judgments, orders, and decrees.  28 U.S.C. § 158(a).  Pursuant to the Federal Rules of Bankruptcy Procedure, an appeal of right may be taken as permitted by 28 U.S.C. § 158(a)(1) or (a)(2).  *See* Fed. R. Bankr. P. 8001(a).

**II. Standard of Review**

    Bankruptcy Courts are governed by the Federal Rules of Bankruptcy Procedure. Federal Rule

of Bankruptcy Procedure 8013 states that a district court shall review the factual findings of a bankruptcy court for clear error. The District Court reviews *de novo* the conclusions of law of the bankruptcy court and application of the law to the particular facts of the case. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir.2009); and *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*.").

### III.  Background[1]

On March 24, 2010, Infolink Group, Inc. and Infolink Information Services, Inc. (collectively "the debtors") filed separate voluntary petitions for relief through their president, Prieur J. Leary, III, under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (10-10981-KG, DE 1; 10-10982-KG, DE 1). The Delaware bankruptcy court entered an order directing the administrative consolidation and joint administration of the two cases, (10-10981-KG, DE 14; 10-10982-KG, DE 8), and the consolidated case was transferred to the United States Bankruptcy Court for the Southern District of Florida on June 2, 2010. (BKC, DE 1). A successor chapter 11 trustee was appointed to manage the debtors' affairs.

On April 4, 2011, the trustee instituted an adversary proceeding on behalf of the debtors against Leary (the debtors' president) and others for, among other things, fraudulent pre- and post-petition transfers of the debtors' assets. (ADV, DE 1). On May 2, 2011, the bankruptcy judge entered a Supplemental Decision and Order Granting Preliminary Injunction (ADV, DE 65) that found Leary

---

[1] The Court adopts the factual findings of the bankruptcy court as they are not disputed by the parties and the Court finds no clear error. For purposes of clarity, documents filed in this docket, 12-21339-CIV-KAM, shall be cited as "(DE __)"; documents filed in the underlying bankruptcy docket, 10-26423-BKC-AJC, shall be filed as "(BKC, DE __)"; and documents filed in the related adversary proceeding, 11-01885-AJC, shall be filed as "(ADV, DE __)."

2

responsible for 1) pre-petition fraudulent transfers of the debtors' assets; 2) apparent intentional misrepresentations made by Leary under oath in the debtors' bankruptcy schedules; 3) post-petition fraudulent transfers of the debtors' assets; 4) fraudulent transfers of the debtors' assets even after the appointment of a Chapter 11 trustee; and 5) further fraudulent transfers and attempted fraudulent transfers of the debtors' assets even after the bankruptcy court entered a temporary restraining order.[2] One attempted post-restraining order transfer occurred when Leary sent a written request to one of the debtors' merchant service providers seeking to change the payee account to Appellant Prontocom, Inc. (ADV, DE 65 at 10 ¶ 17). Leary's attempted transfer of assets to Prontocom was denied by the merchant service provider, however, because provisions of the restraining order prevented the provider from transferring ownership of the merchant accounts.[3]

On May 11, 2011, the bankruptcy court held Leary in civil contempt and directed that he be arrested by the United States Marshal. Leary had twice failed to appear for depositions relating to the trustee's attempt to convert the restraining order into a preliminary injunction. (ADV, DE 86). The bankruptcy court gave Leary an opportunity to purge himself of the consequences of contempt if he appeared for a deposition and produced documents within ten days of the contempt order. Leary again failed to appear. The bankruptcy court thus concluded that:

---

[2] The temporary restraining order was entered on April 4, 2011—the same day the trustee instituted the adversary proceeding. (ADV, DE 5).

[3] In its Supplemental Decision and Order Granting Preliminary Injunction, the bankruptcy judge made the following factual finding: "On April 6, 2011, *after entry of the Temporary Restraining Order*, Leary sent a written request to [an entity named Innovative] attempting to change the payee account from [Defendant Pronto Group, Inc.] to a non-defendant entity, [Appellant] Prontocom, Inc. [Appellant] Prontocom, Inc. is a Delaware corporation that was formed post-petition and after the Trustee's appointment, on December 20, 2010. The attempted transfer of accounts was denied by Innovative because other provisions of the Temporary Restraining Order restrain the Defendant Merchant Service Providers from transferring ownership of the merchant accounts." (ADV, DE 65 at 10 ¶ 17) (emphasis in original).

> given Leary's long history of willful disregard and contempt for the Bankruptcy Code, the bankruptcy process, this Court and its Orders, and these proceedings in general . . . , the entry of a default judgment against Leary and the Defendant entities of which Leary is an officer and on whose behalf he failed to appear for deposition . . . is the most appropriate sanction under these circumstances.

(ADV, DE 155 at 4–5). In ordering that judgment as to liability and for injunctive relief be entered against Leary on the trustee's claims, the court specifically found that certain transfers were established for purposes of the judgment and were fraudulent in nature. *Id.* at 6. For example:

> [A merchant service account held by an entity named Innovative Merchant Solutions] for credit card processing was transferred pre-petition from [Debtor] Infolink Information Services to [an entity named] Infolink Communication. Post-petition, it was again transferred to [an entity named] Pronto Inc. just eight days before the hearing in [the bankruptcy court] on the Motion to Appoint a Chapter 11 Trustee. Two days after entry of [the bankruptcy court's] Temporary Restraining Order, Leary attempted to again transfer it to [Appellant Prontocom, Inc.] (a newly formed corporation, and not a defendant in this action) but was stifled because of provisions in the Temporary Restraining Order that restrained Innovative Merchant Solutions from making the requested transfer. The transfer of the account from Infolink Information Services to Infolink Communication and the transfer of the account from Infolink Communication to Pronto Inc. were fraudulent transfers. The transfer of the account to Pronto Group, Inc. was also a violation of the bankruptcy automatic stay, 11 U.S.C. § 362.

*Id.* at 7 ¶ 5.

On January 6, 2012, the holder of the largest allowable claim against the debtors' consolidated bankruptcy estate, and a group of the debtors' other creditors, stockholders and investors, proposed a Chapter 11 Plan of Reorganization. (BKC, DE 863). Under the reorganization plan, all of the debtors' assets—including those the bankruptcy court found to be fraudulently transferred—would vest in a "reorganized debtor" as of the effective date of the plan. (BKC, DE 863 ¶¶ 1.15, 5.1.2, 14.14). The bankruptcy court confirmed the plan on February 2, 2012, waiving the 14-day stay otherwise applicable under Federal Rule of Bankruptcy Procedure 3020(e) and authorizing the plan's

proponents to consummate the transactions contemplated by the plan upon the order's entry. (BKC, DE 898 ¶¶ 11, 27).

The reorganization plan called for, among other things, the creation of an entity to serve as the reorganized debtor. Consistent with the terms of the plan, a Florida corporation named Infolink Global was specially created to serve as the reorganized debtor, and the "Infolink Global" entity took over control of the debtors' business, operations, assets, and affairs.

The plan also provided for a number of other transactions upon its confirmation: 1) all allowed claims in the underlying bankruptcy case, totaling over $1.3 million, were paid in full while a cash reserve was established to fund payment of disputed claims; 2) all of the debtors' assets and property vested in the reorganized debtor; 3) new equity shares in the reorganized debtor vested in certain of the debtors' existing stockholders in reconstituted amounts designated under the confirmed plan; 4) the reorganized debtor entered into a settlement and release agreement with Appellants and certain related entities by which it sold the debtors' business and all related assets to Appellants and released fraudulent transfer claims against Leary and others; 5) and the reorganized debtor filed lawsuits against certain of the debtors' pre-petition professionals for recovery of fraudulent transfers and state law claims. (DE 5, Attach. 1: James C. Kurzweg Aff.). Included in the debtors' assets and property that would vest in the reorganized debtor were 1) "the Debtors' equity interest in any affiliate, subsidiary or other entity, including . . . [Appellant] Prontocom, Inc." (BKC, DE 898 ¶ 11); and 2) "all bank accounts held in the name of the Trustee or Debtors, and all Cash held by the Trustee in the Trustee's operating account, the remaining Infolink Cash Contribution, and/or held in the Debtors' bank accounts, including the Intuit Payment Solutions merchant account . . . in the name of Prontocom Inc. (the "Intuit Merchant Account")." *Id.* The reorganization plan authorized and directed

the trustee to redirect all deposits in the Intuit Merchant Account, i.e., Prontocom's account, to the reorganized debtor.

Appellants timely appealed the bankruptcy court's confirmation order. Appellant asserts that the bankruptcy court erred by ordering an account held in the name of Appellant Prontocom, Inc., to turn over cash and other assets to the reorganized debtor without obtaining personal jurisdiction over Prontocom.[4] The crux of Prontocom's argument is that Prontocom was never a party to the bankruptcy proceeding or the associated adversary proceeding, Prontocom never submitted itself to the jurisdiction of the bankruptcy court, and Prontocom was never given notice and an opportunity to be heard before the bankruptcy court transferred its property to the reorganized debtor.

The reorganized debtor, as Appellee, responds to Prontocom's claims by arguing that, among other things, Prontocom is a corporation owned and controlled by Leary, over whom the bankruptcy court unquestionably had personal jurisdiction when it ordered Prontocom's assets transferred.[5] Thus, according to Appellee, Prontocom should be bound by any judgment obtained against Leary. While Appellee does not use the term "issue preclusion" in its argument, the Court construes Appellee's position as one under that doctrine. For the reasons that follow, the Court finds Appellee's "issue preclusion" argument persuasive and affirms the Order Confirming Second Amended Chapter 11 Plan of Reorganization for Debtors, Infolink Group, Inc. and Infolink Information Services, Inc., Proposed

---

[4] Appellants Prieur J. Leary, III, and Prontocom, Inc., filed their Notice of Appeal on April 9, 2012 (DE 1), and their initial brief on May 8, 2012 (DE 13).

[5] The reorganized debtor, as Appellee, moved to dismiss Appellants' appeal on grounds of equitable mootness and lack of standing under the Eleventh Circuit's "person aggrieved" standard. (DE 5). The Court granted in part and denied in part the motion on the grounds that Appellant Prontocom has standing to appeal while Appellant Leary does not. The Court also found that there was insufficient factual support in the record to conclude that the reorganization plan had been substantially consummated to the point that the Court could not grant Appellant Prontocom effective relief. (DE 18).

by Creditor James C. Kurzweg and Infolink Equity Group in Bankruptcy Case No. 10-26423-AJC.

### IV.  Discussion

"As a general rule, one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. The rule against nonparty preclusion, however, is subject to six categories of exceptions." *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).

> First, a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement. For example, if separate actions involving the same transaction are brought by different plaintiffs against the same defendant, all the parties to all the actions may agree that the question of the defendant's liability will be definitely determined, one way or the other, in a test case.
>
> Second, nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. These exceptions originated as much from the needs of property law as from the values of preclusion by judgment.
>
> Third, we have confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries.
>
> Fourth, a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered. Because such a person has had the opportunity to present proofs and argument, he has already had his day in court even though he was not a formal party to the litigation.
>
> Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. And although our decisions have not addressed the

> issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment.
>
> Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process. Examples of such schemes include bankruptcy and probate proceedings, and quo warranto actions or other suits that, under the governing law, may be brought only on behalf of the public at large.

*Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) (internal citations, quotations, and alterations omitted).

In *Griswold v. County of Hillsborough*, an Eleventh Circuit case with similar facts, the president and sole shareholder of two companies sued a municipality and others for conspiring to monopolize his local business market. 598 F.3d at 1291. The president was dismissed from the litigation for lack of standing, and judgment was ultimately entered against his two companies.

The president again filed suit—this time individually—advancing claims factually related to the previous litigation, but the district court found that his claims were barred under the doctrine of res judicata. The court held that the president was in privity with his two companies "and thus could be bound by the prior litigation even though he was not a party, because as the sole shareholder and President of the business, the Companies were so closely aligned to [the president's ]interest as to be his *virtual representative*." *Id.* at 1292 (emphasis added) (internal quotations omitted).

On appeal, the Eleventh Circuit recognized that the Supreme Court had recently rejected the "virtual representation" exception that the district court had applied to the president's claim. The appellate court nevertheless affirmed the judgment of the district court, however, because the president had "used his relationship with the Companies to control the prior litigation." *Id.* at 1293. Although *Griswold* applied the fourth "exception" to the general rule against nonparty preclusion, the

Eleventh Circuit noted that "the adequate representation exception also likely applies." *Id.* n.4 ("Although the adequate representation exception also likely applies, we need not reach that issue given our finding on the control exception.").

Based on the Eleventh Circuit's suggestion that the adequate representation exception would have likely applied in *Griswold*, this Court finds that the adequate representation exception applies here, as does the exception for situations in which a substantive legal relationship existed between the person to be bound and a party to the judgment. As noted by the bankruptcy court, Prontocom was created post-petition, and Leary attempted to effect a fraudulent transfer of the assets at issue here to the newly created company—the same assets that Prontocom now argues were taken in violation of its due process rights.[6] Moreover, Leary unquestionably subjected himself to the bankruptcy court's jurisdiction. As in *Griswold*, where the president was in privity with his two companies, Leary is closely aligned to and in privity with Prontocom, the company he controlled and to which he sought to transfer fraudulent assets.

The Court notes that generally, under the doctrine of res judicata, a claim is barred by prior litigation if four elements are met: 1) there is a final judgment on the merits; 2) the decision was rendered by a court of competent jurisdiction; 3) the parties, or those in privity with them, are identical in both suits; and 4) the same cause of action is involved in both cases. *See id.* at 1292. Ostensibly these elements require two separate cases. That this case lacks a predecessor case, however, is immaterial.

---

[6] Prontocom does not argue that Leary did not control it; rather Prontocom implicitly concedes the issue by arguing that the bankruptcy court never "pierced Prontocom[]'s corporate veil." (DE 36 at 5–10). To that end, Prontocom cites cases for the proposition that corporate entities are distinct from their owners under general principles of corporate law. (DE 36 at 6). But whether Prontocom is distinct from Leary in the corporate law sense is irrelevant to this Court's determination of whether Leary adequately represented Prontocom or whether a substantive legal relationship existed between the two for purposes of nonparty preclusion.

The bankruptcy court's order confirming the reorganization plan constitutes a final judgment on the merits, and that decision was rendered by a court of competent jurisdiction (at least as to Leary even assuming Prontocom's objections were valid). Based on this Court's finding that a substantive legal relationship existed between Leary and Prontocom and that Prontocom was adequately represented by Leary, Prontocom is bound by the bankruptcy court's order.

### V. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Order Confirming Second Amended Chapter 11 Plan of Reorganization for Debtors, Infolink Group, Inc. and Infolink Information Services, Inc., Proposed by Creditor James C. Kurzweg and Infolink Equity Group is **AFFIRMED.** The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of March, 2013.

KENNETH A. MARRA
United States District Judge